CAWTHORN *et al.*, Defendants in Error, v. HAYNES *et al.*, Defendants in Error.

1. Depositions to prove a will rejected by a probate court may, in a proceeding to establish the will, instituted in the circuit court under section 31 of the act concerning wills, be taken under the general law concerning depositions.
2. Declarations, made by a testator at times before the date of the will that it is sought to invalidate, that the persons mentioned in the will as legatees " should never have any of his property," as also declarations made on divers occasions after such date, that "he had no will," alone and unsupported by other facts, do not furnish any legal evidence whatever of incapacity on the part of such testator, or of undue influence, and are inadmissible in evidence.

*Error to Cedar Circuit Court.*

The facts sufficiently appear in the opinion of the court.

*F. P. Wright,* for plaintiffs in error, cited 22 Maine, 440; 1 Jarm. on Wills, 75, 118 ; 3 Mass. 330 ; 9 Yerg. 339; 7 S. & R. 90 ; 2 Greenl. Ev. § 694 ; 3 Dev. 442 ; Reel v. Reel, 1

Hawks, 218; 17 Ala. 55; 7 Conn. 411; 7 Pick. 99; 1 Ves. jr. 11; 2 Atk. 56; 34 Maine, 162.

*Napton & Otter*, for defendants in error, cited R. C. 1845, tit. Wills, § 18, 31; Logan v. McGinnis, 12 Penn. State R. 27; Baldwin v. The State, 12 Mo. 235; 9 Mo. 169; 1 Jarm. on Wills, 77; 2 Greenl. Ev. 690; Smith v. Fenner, 1 Gall. 170; 5 Barr, 441; Gooch v. Conner, 9 Mo. 394.

LEONARD, Judge, delivered the opinion of the court.

The only questions that were argued before us, in this case, relate to the refusal to suppress the deposition of one of the subscribing witnesses to the will, and to the exclusion of the testator's declarations, made both before and after the date of the will. In reference to the first question, we remark, that the statute prescribing the manner in which the deposition of an absent subscribing witness may be taken for the purpose of proving a will in the first instance before the probate court has nothing to do with this matter, and was never intended, nor is it understood in practice, to exclude a party from taking a deposition in the common form under the general law, when the proceeding is pending in the Circuit Court. The party, too, had notice of the time and place of taking it; but as he appeared and cross-examined the witness, the fact of previous notice was quite immaterial; and it sufficiently appears, from the whole deposition, that all the requisites of the statute were complied with on the part of the examining officers. These remarks dispose of the first point. Indeed the only real matter of controversy, as to the law of the case, is in reference to the excluded testimony. We had occasion to consider this question somewhat at large, at the present term, in the case of Gibson v. Gibson et al., and refer to that case for our opinion upon the subject, and shall proceed at once to apply the principles there laid down to the case now before us. We first remark that, although this case has been argued before us as if the validity of the will had been really contested on the ground of the

testator's mental incapacity, or of undue influence exerted over him, yet no evidence whatever was given at the trial, or even offered, tending to establish either fact, except the rejected declarations. The testator, it seems, gave all his property to his wife for life, and upon her death (there being no children) to the children of James Cawthorn and of Mrs. Worby—two-thirds to the first, and the remaining third to the latter family. He left, it seems, surviving brothers and sisters, and the descendants of such; but what relationship, if any, existed between the testator and the children that were the subjects of his bounty, does not appear. The will was written by Mr. Cawthorn, at his own house, and the circumstances attending its execution were proved by the subscribing witnesses. It was dated in 1845, and the testator died in 1850; and all the witnesses spoke of the testator as a man of sound mind. Mr. Cawthorn was appointed sole executor.

The defendant gave no evidence at all, except the previous deposition of one of the subscribing witnesses for the purpose of contradicting him; but offered to prove that the testator, on various occasions, before the date of the will, and afterwards up to the time of his death, stated that the legatees mentioned in the will "should never have any of his property;" and also on several occasions afterwards that "he had no will." The declarations made after the date of the will were relied upon, we suppose, respectively, as direct and implied assertions that the party had never made a will, or that if he had, it had since been revoked; and the case of Gibson v. Gibson, already referred to, settles that if relied on for this purpose, they are mere hearsay, and wholly inadmissible. It is insisted, however, that the previous declarations ought to have been received as verbal facts manifesting the existing feeling and intentions of the testator towards those who are claimed to have been subsequently the subjects of his bounty, and the after declarations as manifesting a continuance of the same feelings and purpose, so as to repel the presumption, that might otherwise arise from the dispositions of the will, that at the time he made it his

feelings and purpose had undergone a change. The answer to this, we think, is that no foundation was laid for letting in proof of the testator's feelings and purpose towards these children. It is true, declarations of an opposite character were received in Norris v. Shepherd (20 Penn. State Rep. 475); but other testimony had been previously given of what transpired at the making of the will, and of the condition of the testator before and at the time, tending to establish insanity; and the kind relations and purposes of the testator towards his own kindred were then received in order to strengthen the improbability that, under these circumstances, he would have given all to a mere stranger, if he had been in his right mind at the moment of making the will. It was not supposed, we think, that the previous kind feelings and intentions of the testator, standing alone and unconnected with any substantive proof of incapacity, could be submitted to the jury as competent evidence, from which they might infer insanity in order to invalidate the will. And in the present case, we are clearly of opinion that the declared purpose of the testator that these children should not share his bounty, made before and repeated after the date of the will, wholly unsupported as it was by any evidence whatever of incapacity or undue influence, would not have justified the jury, in point of law, in finding against the will. We do not mean to say merely that, under the circumstances, the evidence was insufficient, in point of fact, to produce conviction; but to declare, as a matter of law, that the declarations, alone and unsupported by other facts, did not furnish any legal evidence whatever of the testator's alleged incapacity, or of undue influence, and of course their exclusion furnishes no ground whatever for reversing the judgment.

We do not discover any error in the record prejudicial to the appellants, and the judgment is therefore affirmed.